

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

---

## NO. 2-08-038-CR

---

JON RICHARD ORLANDO                                          APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

Appellant Jon Richard Orlando appeals his conviction for robbery causing bodily injury. Appellant argues that the evidence is both legally and factually insufficient to support his conviction because there is a lack of evidence to show he possessed the necessary mental state alleged in the indictment.

---

[1] *See* Tex. R. App. P. 47.4.

Appellant specifically argues that (1) his convicted offense is not a lesser offense of the indicted offense, and (2) there is a fatal variance between the indicted offense and the proof adduced at trial. We affirm.

## II.    Factual and procedural background

Appellant was indicted for robbery on July 26, 2007. The indictment alleged that Appellant "intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause[d] bodily injury to Dwayne Sakaguchi by hitting Dwayne Sakaguchi with his hand."[2] Appellant waived trial by jury, and after a bench trial, the court found Appellant guilty of the lesser included offense of robbery, "based on the reckless culpable mental state."

The alleged offense occurred on June 6, 2007, at 7:40 p.m. Dwayne Sakaguchi, a loss prevention investigator working at the Eastchase Target store in Fort Worth, was watching a live closed-circuit security monitor and noticed Appellant and an individual acting suspiciously. He went to the sales floor to closely observe the two individuals. Sakaguchi saw Appellant remove a Polaroid multimedia player from its package with a knife and place the item in

---

[2] The indictment also contained a repeat offender notice for Appellant's past burglary conviction.

2

his back left pocket. Sakaguchi testified that he followed Appellant as he attempted to leave the store without paying for the multimedia player.

As Appellant passed the electronic security towers at the exit door, Sakaguchi approached him from behind and identified himself as Target security. When they both were outside the exit doors, Sakaguchi asked Appellant to come back into the store.[3] Sakaguchi testified that he had his hand on Appellant's stomach to coax him back into the store. Sakaguchi stated that Appellant resisted and "got combative." As the two were closer to the inside of the store, Appellant allegedly struck Sakaguchi. As Sakaguchi described the incident, when he blocked Appellant from exiting, Appellant hit him with an open palm on the bottom of his right eye and also hit him with his elbow as they fell to the ground. Sakaguchi described Appellant's strike as one full motion, with his right palm and elbow, as he tried to evade apprehension. When asked by the trial court if it was "like a football player would push a blocker," Sakaguchi responded, "No. Like an intentional hit." After this response, the trial court suggested to Sakaguchi that Appellant's strike seemed

---

[3] Sakaguchi explained that, for his loss prevention duties at Fort Worth stores, he must wait until the suspicious individual exits the store to detain them.

3

"like someone [] trying to push a tackler out of the way, like a pop," and Sakaguchi agreed with the court's characterization.

After this blow, Sakaguchi said that he felt pain and his vision started to blur. Sakaguchi stated that he tried to hold Appellant's upper body and get him on his knees, but he could not place handcuffs on him. Sakaguchi stated that he and a trainee, present throughout the scuffle, tried to talk to Appellant. He described the guidelines he must follow when he cannot restrain a person by stating he was allowed to use "enough [force] to get [a person] into handcuffs," but only enough to "get the subject under control." Sakaguchi stated that he was able to get Appellant back into the store within a minute and a half.

At trial, the State offered the store video of the incident containing two camera views: the electronics area of the store and the inside portion of the store entrance. Sakaguchi stated that Appellant's strike to his face was not caught on camera because it occurred outside the store, when he and Appellant were out of the camera's view. Sakaguchi explained that there were no cameras focused on the exterior area of the store's front doors. Sakaguchi confirmed he was visible in the videotape "wrestling around" with Appellant after the injury to his eye occurred.

Police officer Scott Sikes of the Fort Worth Police Department testified that he arrived after the incident with Sakaguchi occurred and immediately

4

handcuffed Appellant. Officer Sikes stated that Appellant was "pretty agitated," and was "flailing his arms, trying to twist away from us." Officer Sikes stated that he spoke with Sakaguchi about the event and noticed swelling and redness beneath one of Sakaguchi's eyes. Officer Sikes also stated that Appellant moved around and yelled while waiting in the police car. Officer Sikes took Appellant to the police station where Detective Brent Johnson, a robbery detective for the Fort Worth Police Department, interviewed him.

Detective Johnson testified that on the day of the altercation, Appellant gave a statement. The State offered Appellant's signed, dictated statement, which contained a paragraph with an acknowledgment of the *Miranda* warnings and a second paragraph with Appellant' summary of what occurred. In the second paragraph, Appellant stated that he went to Target with a friend and saw that friend purchase an iPod mp3 player. Appellant stated that he "went to the little Ipods and cut the package and took it out of the package and put it in [his] back pocket." He then stated, "As I went toward the door, 2 dudes came up and grabbed me[;] one looked about 16 years old 85-90 lbs[.] He grabbed my arm and I threw my elbow forward to get away from him."

After receiving all the testimony and hearing closing arguments, the trial court found Appellant guilty of recklessly causing bodily injury in the course of committing theft. The trial court explained that there was no question that

5

Appellant's *conduct* in trying to escape was intentional. The trial court stated that the conduct, as shown in the video, was intentional or knowing, but that "a conviction for robbery requires a *result* to be intentional or knowing as far as the bodily injury element of the offense." [Emphasis added] The trial court described the rule of transferred intent and stated that when an individual shoves a person to get them out of the way, his elbow and palm hit the right cheek, whereas when an individual intentionally hits a person, the individual's hand or elbow hits that person's left cheek.[4] The trial court concluded that if an individual person tries to elbow his way out of a predicament and hits someone causing injury, at minimum the individuals's conduct is reckless, because "a reasonable person under the circumstances is aware of the nature of their conduct and of the risk." *See* Tex. Penal Code § 6.02(c) (Vernon Supp. 2008).

During the punishment phase, Appellant pleaded true to the repeat offender notice. The trial court sentenced Appellant to twenty years' confinement.

---

[4] In this case, Sakaguchi's injury was on his right cheek, indicating more of a "shove," according to the trial court.

## III. Legal and factual sufficiency of the evidence

Appellant argues that the evidence is legally and factually insufficient to prove robbery causing bodily injury and, because the trial court found Appellant guilty based on a mental state not alleged in the indictment, there is a fatal variance between the indictment and the proof at trial.

### a. Legal sufficiency standard of review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

The trial judge, when sitting as the sole trier of facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative

7

force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

### b. Factual sufficiency standard of review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the judgment. *Watson*, 204 S.W.3d at 417.

8

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the trial court's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict often turns on an evaluation of credibility and demeanor. *Johnson*, 23 S.W.3d at 8. Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

## c. Applicable law

### 1. The robbery offense

The State is required to prove every element of an offense beyond a reasonable doubt. Tex. Penal Code § 2.01 (Vernon 2003). Texas Code of Criminal Procedure Article 21.03 commands that "[e]verything should be stated

9

in an indictment which is necessary to be proved." Tex. Code Crim. Proc. Ann. art. 21.03 (Vernon 2009). The penal code describes robbery as,

> (a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:
>
>> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or
>>
>> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

Tex. Penal Code § 29.02(a) (Vernon 2003).

### 2. The culpable mental states

Culpable mental states are classified according to degrees, from highest to lowest, as follows: (1) intent, (2) knowledge, (3) recklessness, and (4) criminal negligence. *See id*. § 6.02(d). A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *See id*. § 6.03(a) (Vernon 2003). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *See id.* § 6.03(b). A person acts recklessly when he is aware of, but consciously disregards, a substantial and unjustifiable risk that the result will occur. *See id*. § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person

10

would exercise under all the circumstances as viewed from the actor's standpoint. *Id*.

By its definition, "reckless" is a lesser culpable mental state than "intentional or knowing." *See id*. § 6.02(d); *see also Rocha v. State*, 648 S.W.2d 298, 302 (Tex. Crim. App. 1982) (op. on reh'g) (holding that, for the purpose of submitting to the jury the lesser included offense of aggravated assault, "reckless" is included under the canopy of higher culpable mental states of "intentional" and "knowing" alleged in the indictment for the greater offense of attempted murder).

### 3. The trial court's authority to find guilt for lesser included offenses

In a bench trial, a trial judge is authorized to find a defendant guilty for any lesser included offense for which the evidence provides the required proof. *See Shute v. State*, 877 S.W.2d 314, 314 (Tex. Crim. App. 1994) (holding that the double jeopardy clause does not bar retrial on a lesser included offense when the first trial was a bench trial and there was sufficient evidence for the trial judge to find defendant guilty of the lesser offense); *Donohoe v. State*, No. 08-04-00105-CR, 2007 WL 528554, at *1 (Tex. App.—El Paso 2007, pet. ref'd) (not designated for publication). The prosecution is not required to submit a lesser included offense charge to the trial judge in order for the trial

11

court to be authorized to find guilt of any lesser offense.  *Shute*, 877 S.W.2d at 314; *Leach v. State*, 35 S.W.3d 232, 237 (Tex. App.—Austin 2000, no pet.); *Watson v. State*, 923 S.W.2d 829, 832 (Tex. App.—Austin 1996, pet. ref'd).  This process differs from a jury trial, where the court must decide if instructions on a lesser offense in the jury charge are required.[5]

### 4.    Determining lesser included offenses

Whether one offense is a lesser included offense of another is determined on a case-by-case basis.  *Jacob v. State*, 892 S.W.2d 905, 907 (Tex. Crim. App. 1995).  The starting point in the analysis of a lesser included offense is Texas Code of Criminal Procedure Article 37.09, which lists four ways an offense can be the lesser included offense of a charged offense.  *See id.*

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required[6] to establish the commission of the offense charged;

---

[5] There is a two-step analysis to determine when a charge on a lesser offense should be given.  *See Hall v. State,* 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998). The first step is to determine whether the offense is a lesser included offense under article 37.09, and the second step is to evaluate the evidence to determine whether there is evidence that would permit a rational jury to convict a defendant of only the lesser offense.  *See Moore*, 969 S.W.2d at 8.  There must be evidence that a jury could acquit the defendant of the charged greater offense.  *Id*.

[6] Facts "required" means the evidence legally required to prove the elements.  *Hall*, 225 S.W.3d at 534.

12

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

*See* Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).

The constitutional validity of article 37.09 rests in part on its reference to the charged offense and to the restricted or reduced culpability of the lesser included offense as compared to the charged offense. *Jacob,* 892 S.W.2d at 908 (*citing Day v. State*, 532 S.W.2d 302, 315 (Tex. Crim. App. 1976) (op. on reh'g)). Otherwise, a defendant could be convicted of an offense not subsumed in the charged offense, but shown by the evidence presented. *Id*. The determination of a lesser included offense is made without regard to punishment; one offense may be a lesser included offense even if it carries the same penalty. *Nejnaoui v. State*, 44 S.W.3d 111, 118 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

### d.    Analysis

Appellant does not contest the sufficiency of the evidence showing that he stole the multimedia player or the evidence that he injured someone during this theft; rather, his argument focuses on (1) the sufficiency of the evidence

13

for his conviction based on a lesser culpable mental state not alleged in the indictment and (2) a potential variance between the allegations and the proof adduced at trial. We will discuss each part of his argument in turn.

### 1. The lesser included offense

In part of his argument, Appellant asserts that he was convicted for the same offense as the offense charged in the indictment, rather than a lesser offense. However, Appellant's conviction for recklessly causing bodily injury in the commission of theft constituted a lesser included offense under article 37.09(1) and (3). Tex. Code Crim. Proc. Ann. art. 37.09(1), (3).

First, under article 37.09(1), the convicted offense was established by the same or fewer than the same facts required to establish the charged offense: for the convicted offense, the evidence only had to establish that, during the commission of the theft, when Appellant hit Sakaguchi, he acted with conscious disregard to a substantial or unjustifiable risk that the resulting bodily injury to Sakaguchi would occur. *See* Tex. Penal Code § 6.03(c). This offense was established with similar or fewer facts than the indicted charge that during the theft, Appellant hit Sakaguchi and acted with a conscious objective or reasonable certainty to cause the resulting bodily injury. *See id*. § 6.03(a), (b); Tex. Code Crim. Proc. Ann. art. 37.09(1). Also, in this case, the "hitting" conduct and "bodily injury" result constituting the lesser included "reckless"

14

robbery offense are the same conduct and result alleged in the indictment for robbery with an "intentional or knowing" mental state; the two offenses require the State to prove the same elements and only differ in regard to mental states. *See Gay v. State*, 235 S.W.3d 829, 832 (Tex. App.—Fort Worth 2007, pet. ref'd) (lesser included offense of reckless bodily injury to child differed only in mental state to the indicted offense of intentional or knowing bodily injury to child); *cf. Irving v. State*, 176 S.W.3d 842, 846 (Tex. Crim. App. 2005) (holding that the conduct in the lesser included offense jury instruction for assault was not the same as the two theories of conduct charged in the indictment for aggravated assault). This leads to the other applicable definition: under article 37.09(3), the convicted offense of robbery with a reckless mental state differs from the offense charged only in the respect that the reckless culpable mental state suffices to establish its commission. Tex. Code Crim. Proc. Ann. art. 37.09(3); *see also Rocha*, 648 S.W.2d at 302 (stating the additional culpable mental state of "reckless" submitted in jury charge was a lesser culpable mental state of the alleged "intentionally" and "knowingly" mental states); *Gay*, 235 S.W.3d at 832.

Both the indictment and the State asserted an "intentional or knowing" mental state for the robbery offense, but the trial court weighed the evidence and determined that Appellant's manner of striking Sakaguchi was more akin

15

to "shoving" or "elbowing his way out of a predicament," rather than intentionally causing injury to Sakaguchi with the palm and elbow blow to Sakaguchi's right cheek. The trial court concluded that if, while elbowing his way out of a predicament, an individual hits a person with the palm and causes injury, "at minimum the conduct is reckless, because a reasonable person under the circumstances is aware of the nature of their conduct and of the risk." Thus, the trial court properly decided,[7] based on Appellant's manner of shoving Sakaguchi out of the way while striking him with his palm, that Appellant acted recklessly, rather than intentionally or knowingly, under the robbery statute. *See id., In re R.H.*, No. 02-05-00340-CV, 2006 WL 1653171 at *1 (Tex. App.—Fort Worth 2006, no pet.) (mem. op., not designated for publication) (stating that committing assault recklessly under penal code section 22.01(a)(1) is a lesser included offense of committing assault intentionally or knowingly under that section).

---

[7] The previously-noted two step analysis is unnecessary in this case because this was a bench trial and the State was not obligated to submit jury instructions for this lesser offense. *See Shute*, 877 S.W.2d at 314.

16

## 2. Variance

Appellant argues there was a fatal variance between the indicted offense and the proof adduced at trial, violating his due process right of notice. A variance is defined as a discrepancy between the allegations in the charging instrument and the proof at trial. *See Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). The Texas Court of Criminal Appeals has recently held that an offense is denominated a "lesser included" offense when the proof of the lesser offense is "included" in the offense described in the charging instrument. *Wasylina v. State*, 275 S.W.3d 908, 910 (Tex. Crim. App. 2009). The court stated that, if the State proves the charged offense, it necessarily proves all lesser included offenses. It added that "[this] is why the submission of a lesser-included offense does not violate a constitutional due[-]process right to notice of the crime of which he is accused." *Id*.

In this case, the State provided evidence from physical exhibits and Sakaguchi's[8] and Officer Sikes's testimony that tended to prove Appellant intentionally or knowingly struck Sakaguchi with his hand during the commission of a theft, which is the same offense described in the allegations in the indictment. There is no detectable variance when the allegations are the

---

[8] Sakaguchi at one point asserted that Appellant's strike at his face was "an intentional hit."

17

same as the proof adduced at trial; the State pursued the indicted offense throughout its case and closing argument, rather than asserting Appellant's culpable mental state was "reckless."[9] At the end of closing arguments, the trial court was entitled to find Appellant guilty of the lesser included offense of robbery with a reckless culpable mental state, despite the absence of that mental state in the State's arguments. *See Shute,* 877 S.W.2d at 314.

## IV. Conclusion

Viewing the evidence in a light most favorable to the prosecution, the trial court could have found beyond a reasonable doubt that, in the course of committing a theft, Appellant recklessly caused bodily injury to Sakaguchi when he struck Sakaguchi with his palm and elbow. Tex. Penal Code Ann. § 29.02(a)(1). We hold that the evidence is legally sufficient to support the trial court's judgment and we overrule Appellant's first point. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

Viewing the evidence in a neutral light, we cannot say that the evidence is so weak that the trial court's determination that, in the course of committing a theft, Appellant recklessly caused bodily injury to Sakaguchi is clearly wrong or manifestly unjust. We also cannot say that the conflicting evidence so

---

[9] Appellant's counsel, however, did assert in closing arguments that Appellant's acts could "possibly" be deemed "reckless," however, and acknowledged the trial court's response that it was authorized to convict on the lesser included offense.

greatly outweighs the evidence supporting the conviction that the trial court's determination is manifestly unjust. *See Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold that the evidence is factually sufficient to support the trial court's judgment, and we overrule Appellant's second point.

Having overruled both of Appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL:  GARDNER, LIVINGSTON, and DAUPHINOT, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 4, 2009